**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                    :
**LORRAINE WETZEL,**                                :
                                                    :
                    **Plaintiff,**                  :
                                                    :
        **-against-**                               :        **REPORT AND**
                                                    :        **RECOMMENDATION**
                                                    :        06 Civ. 6117 (SCR)(MDF)
**TOWN OF ORANGETOWN,**                             :
**KEVIN NULTY, ROBERT ZIMMERMAN,**                  :
**THOM KLEINER, KEANE & BEANE, P.C.,**              :
**LANCE H. KLEIN, JOSEPH E. WOOLEY,**               :
**AND "JOHN DOE," each in their official and**      :
**individual capacities,**                          :
                                                    :
                    **Defendants.**                 :
                                                    :
-------------------------------------------------------------X

**TO:    THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

        Lorraine Wetzel ("Plaintiff") brings this action against the Town of Orangetown

("Town"), Chief of Police Kevin Nulty ("Nulty"), Police Captain Robert Zimmerman

("Zimmerman"),[1] Supervisor Thom Kleiner ("Kleiner"), the law firm of Keane & Beane, P.C.

("K&B") and its partner, Lance H. Klein ("Klein"), Joseph E. Wooley, Esq. ("Wooley"), and

"John Doe," asserting federal claims of gender discrimination, retaliation, denial of equal

protection, deprivation of due process, and conspiracy, as well as several state law claims.

Currently pending before the Court are two motions: (1) a motion to dismiss Plaintiff's Amended

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure submitted by the

Town, Nulty, Kleiner, K&B, and Klein; and (2) a motion to dismiss Plaintiff's Amended

_____

        [1]By stipulation of the parties, so ordered by your Honor (Doc. # 26), all claims asserted against
Zimmerman have been dismissed without prejudice.

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure submitted by Wooley. *See* Doc. #'s 13-23. For the reasons that follow, I respectfully recommend that your Honor grant Defendants' motions.

## BACKGROUND

This case ("*Wetzel III*") is related to several other cases filed in this Court involving Plaintiff, a police officer in the Town of Orangetown, and allegations that she has been the victim of gender discrimination (Docket Numbers 03 Civ. 9896 ("*Wetzel I*"), 06 Civ. 5144 ("*Wetzel II*"), 06 Civ. 11441 (*Colandrea v. Town of Orangetown*), 06 Civ. 15190 ("*Wetzel IV*"), 08 Civ. 0196 ("*Wetzel VI*")). Plaintiff here makes new allegations of discrimination, as well as allegations of retaliation, in the form of the preferment and prosecution of disciplinary charges. The Amended Complaint is prolix – 535 paragraphs, many of which are pled "upon information and belief," and 75 pages in length – and it is replete with legal argument. The fact section is divided into two parts, "Essential Facts," Am. Compl. ¶¶ 14-92, and "Associated Facts," Am. Compl. ¶¶ 93-415.

The summary of the "Essential Facts," as alleged in the Amended Complaint, is as follows:

Plaintiff is a 27-year veteran of the Town of Orangetown Police Department. Am. Compl. ¶ 14. In 2001, Plaintiff filed a New York State Article 78 proceeding, alleging that she was wrongfully denied a promotion in January 2001 due to gender discrimination. *Id.* ¶ 17; *but see id.* ¶ 26 n.4 (Plaintiff's Article 78 trial focused on Defendants' noncompliance with the Rockland County Police Act criteria for promotion, not on gender discrimination). In December 2003, Plaintiff filed a federal lawsuit alleging gender discrimination by the Town and Nulty,

including the failure to promote Plaintiff to the rank of lieutenant in January 2001. *Id.* ¶ 18. On or about July 12, 2004, Plaintiff filed an amended federal complaint, adding new post-2003 claims, including retaliation and failure to promote her in January 2004. *Id.* ¶ 19. Soon thereafter, Nulty made comments to a local newspaper which publicly disparaged Plaintiff and disputed her claims of discrimination. *Id.* ¶ 23. Plaintiff's attorney responded with a letter to the editor, claiming that there was a "glass ceiling" for female officers in the Orangetown Police Department. *Id.* ¶ 25. In September 2004, judgment was entered in the New York State Article 78 proceeding relating to Plaintiff's Rockland County Police Act challenge to the failure to promote her in January 2004. *Id.* ¶ 26.

Based upon Plaintiff's 2004 federal action, her attorney's letter to the editor, and the Article 78 dismissals, Nulty decided to retaliate against Plaintiff. *Id.* ¶ 27. Such retaliation was also intended to undermine Plaintiff's upcoming chance for promotion in January 2005. *Id.* On September 3, and September 7, 2004, Nulty signed departmental disciplinary charges against Plaintiff, alleging that she failed to supervise police subordinates properly on July 4, and July 7, 2004. *Id.* ¶¶ 28-29. K&B and Klein prepared or assisted in the preparation of such charges and gave Nulty, Zimmerman, Kleiner, and the Town advice thereon. *Id.* ¶ 30. These disciplinary charges were the first and only charges made against Plaintiff in her entire career with the Orangetown Police Department, *id.* ¶ 32, and they were brought in retaliation for Plaintiff's opposition to unlawful discrimination and to sabotage Plaintiff's candidacy for a January 2005 promotion. *Id.* ¶ 37.

Plaintiff was the most qualified candidate for promotion to lieutenant in January 2005, but her gender and her opposition to unlawful discrimination caused her to be passed over for the

promotion.  *Id.* ¶¶ 38, 43.  In addition, around that same time period, Plaintiff developed a serious medical condition that resulted in her getting a partial hysterectomy in early 2005.  *Id.* ¶ 44.  Thereafter, Nulty and his administration harassed her and treated her differently than male police officers and supervisors by, among other things, demanding that she undergo an unauthorized and invasive gynecological examination by a male doctor whom she did not know, and subjecting her to unnecessary "sick checks," *i.e.*, phone calls to her home to make sure that she was there convalescing after her surgery.  *Id.* ¶¶ 45-52.

In January 2006, Plaintiff was finally promoted to the rank of lieutenant, despite Nulty's gender-biased opposition, although this time, she was a less qualified candidate for the position than another eligible male officer.  *Id.* ¶¶ 56-60.  The Town promoted her in order to avoid liability on Plaintiff's federal claims in *Wetzel I*.  *Id.* ¶ 54.  In a letter dated February 1, 2006, Klein wrote a letter to Plaintiff's attorney which "sought to extort a settlement or discontinuance of Plaintiff's legitimate federal claims by the threatened prosecution of disciplinary charges."  *Id.* ¶ 70.  In writing this letter, Klein was acting on behalf of the Town and Nulty.  *Id.* ¶ 69.  Because Plaintiff refused to discontinue her federal action, on July 11, 2006, the Defendants commenced a disciplinary trial against her on the September 7, 2004 charges.  *Id.* ¶ 81.  K&B and Klein sought to prosecute the disciplinary charges against Plaintiff in order to gain a litigation advantage over her in *Wetzel I*.  *Id.* ¶ 82.  Other male police supervisors have committed worse misconduct than that alleged against Plaintiff in the September 2004 charges, yet none of them have faced formal disciplinary action.  *Id.* ¶ 89.  The disciplinary trial involved nine days of testimony and ended on November 1, 2006.  *Id.* ¶ 91.

Supplementing the "Essential Facts" are the so-called "Associated Facts," a section of the

Amended Complaint containing lengthy allegations about the discriminatory and retaliatory nature of the disciplinary charges brought against Plaintiff, as well as the way in which Nulty used disciplinary charges to discriminate against female police officers and their male supporters. *Id.* ¶¶ 93-212. Plaintiff also includes a number of allegations concerning unfairness in the procedures leading up to the disciplinary trial, as well as in the way in which the disciplinary trial was conducted. *Id.* ¶¶ 213-47. She alleges that she was subjected to disparate discipline based on her gender and her federal discrimination lawsuit. *Id.* ¶¶ 255-73. Plaintiff further alleges that hearing officer Wooley was appointed by the Town Board at the behest of Nulty, K&B, and Klein and was thus, guaranteed to rule in favor of Nulty and the Town. *Id.* ¶¶ 274-89. She alleges that Wooley lacked jurisdiction to preside over the disciplinary trial and that therefore, he acted without authority. *Id.* ¶¶ 293-321.

Plaintiff further alleges that K&B and Klein lacked legal authority to act as prosecutor in the disciplinary hearing, but that they used the authority and power of their prosecutorial role to unlawfully prosecute Plaintiff. *Id.* ¶¶ 326-53. Plaintiff also includes in her "Associated Facts" allegations amounting to legal arguments as to why the individual defendants are not entitled to absolute or qualified immunity for their roles in the disciplinary proceedings brought against her. *Id.* ¶¶ 354-407. Finally, Plaintiff alleges that the Town is liable since the misconduct of the individual defendants amounted to a municipal policy and practice, *id.* ¶¶ 408-10, and that she has exhausted her administrative remedies with respect to her Title VII claims. *Id.* ¶¶ 411-15.

Based on the foregoing, Plaintiff asserts nine claims under both federal and state law: (1) a claim under 42 U.S.C. § 1983 and Title VII for gender and political non-affiliation discrimination based on the January 2005 failure to promote; (2) a claim under 42 U.S.C. § 1983

and Title VII for retaliation; (3) a claim under the New York Human Rights Law for discrimination and retaliation; (4) a claim for abuse of process; (5) a claim under 42 U.S.C. § 1983 for denial of equal protection; (6) a claim under 42 U.S.C. § 1983 for denial of procedural and substantive due process; (7) a three-part state law claim (a) for retaliation in violation of New York Civil Service Law § 75-b, (b) for a writ of *certiorari* directing the Town Board to end the disciplinary proceedings against Plaintiff and declaring the disciplinary trial a legal nullity, and (c) for a writ of prohibition or mandamus, barring the use of allegedly unlawfully obtained wiretap evidence in Plaintiff's disciplinary trial; (8) a claim under 42 U.S.C. §§ 1985 and 1986 for conspiracy to violate Plaintiff's federal rights; and (9) a claim under New York Judiciary Law § 487 for attorney deceit.

The Town, Nulty, Kleiner, K&B, and Klein move to dismiss on several grounds: (1) for failure to state a claim against K&B and Klein; (2) for failure to state a claim against Kleiner in his individual capacity; (3) for failure to state a claim against Nulty in his individual capacity with respect to the preferment and prosecution of the disciplinary charges against Plaintiff; and (4) for failure to state a claim with respect to the fourth, fifth, sixth, seventh, eighth, and nine claims set forth in the Amended Complaint. Wooley separately moves to dismiss (making virtually the same legal arguments in his initial moving papers) (1) for failure to state a claim against him; (2) for failure to state a claim against him in his official and individual capacities with respect to the preferment and prosecution of the disciplinary charges against Plaintiff; and (3) for failure to state a claim with respect to the fourth, fifth, sixth, seventh, eighth, and nine claims set forth in the Amended Complaint.

## DISCUSSION

## I.     Applicable Legal Standards

In *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007), the Supreme Court reconsidered the standard for deciding a motion to dismiss under Rule 12(b)(6), and applied "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  While *Twombly* did not make clear whether this change from traditional pleading standards applies outside the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 n.2 (2d Cir. 2007).  Accordingly, a complaint may be dismissed under this standard where it fails to plead "'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson & Johnson v. Guidant Corp.,* No. 06 Civ. 7685, 2007 WL 2456625, at *4 (S.D.N.Y. Aug. 29, 2007) (quoting *Twombly,* 127 S. Ct. at 1974).  "'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 127 S. Ct. at 1965).  "Where a plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed.'"  *Id.* (quoting *Twombly,* 127 S. Ct. at 1974).  Nevertheless, courts must continue to accept all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *ATSI,* 493 F.3d at 98.

In deciding a motion to dismiss, in addition to the complaint itself, a court may consider documents attached as an exhibit thereto or incorporated by reference therein; documents that

are integral to the complaint, even if not explicitly incorporated by reference; and matters of which judicial notice may be taken. *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002). With their motion papers, Defendants have submitted portions of the disciplinary hearing transcripts, as well as a number of other documents related to the disciplinary proceedings. Despite Plaintiff's argument that such documents are not "integral to the complaint," *see* Pl.'s Mem. of Law [Doc. # 20] at 12-13 ("The claims set forth in the Complaint do not hinge upon the disciplinary record."), the Amended Complaint contains numerous allegations concerning the manner in which the disciplinary proceedings were conducted and the evident bias of hearing officer Wooley. *See*, *e.g.*, Am. Compl. ¶¶ 218-47, 285-89. In any event, these documents may be considered since a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Thomas,* 232 F. Supp. 2d at 276 (internal quotation marks and citations omitted).[2]

---

[2]Plaintiff contends that if the Court takes judicial notice of the record from the disciplinary proceedings, it should require Defendants to produce the disciplinary record in its entirety and should not consider the documents submitted. *See* Pl.'s Mem. of Law at 13. However, she provides no legal authority to support this contention.

## II.    __Absolute Immunity__[3]

### A.    __Municipal and Law Firm Defendants__

Nulty, K&B, and Klein contend that all claims asserted against them based on their preferment and prosecution of the disciplinary charges against Plaintiff should be dismissed on the ground of absolute immunity.  In deciding whether an official is entitled to absolute immunity, courts employ a "functional approach," which focuses "on 'the nature of the function performed, not the identity of the actor who performed it.'  While it is the party claiming absolute immunity who 'bears the burden' of establishing its applicability, once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citations omitted).

Absolute immunity has been extended to executive officers initiating administrative proceedings. *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992) (citing *Butz v. Economou*, 438 U.S. 478, 515-17 (1978)).  Here, Plaintiff alleges that Nulty wrongfully preferred disciplinary charges against her. *See, e.g.,* Am. Compl. ¶ 28; *see also* Klein Decl. Exs. C & D (copies of disciplinary charges preferred by Nulty on September 3, 2004 and September 7, 2004).  Therefore, her claims against Nulty based on the initiation of the disciplinary

_____

[3]Defendants initially argue that the Amended Complaint should be dismissed based on principles of abstention under *Younger v. Harris*, 401 U.S. 37 (1971). *See* Mem. of Law in Supp. of Mot. to Dismiss [Doc. # 16] at 12-13.  However, it is "well established that *Younger* abstention is inappropriate on a claim for money damages." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 196 (2d Cir. 2002) (citation omitted).  Thus, where, as here, Plaintiff seeks money damages for her claims based on the disciplinary proceedings, *Younger* abstention does not apply.  Moreover, the only claim for which Plaintiff seeks equitable relief – the state law claim for writs of *certiorari* and prohibition – should otherwise be dismissed for the reasons set forth herein.

proceedings should be dismissed on the ground of absolute immunity. *See Contes v. Porr*, 345 F. Supp. 2d 372, 379 (S.D.N.Y. 2004) ("[Absolute immunity] attaches to particular functions, one of which is the preferment of administrative proceedings.").

Absolute immunity also extends to "prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" *Bernard*, 356 F.3d at 502 (citation omitted). Here, Plaintiff alleges that K&B and Klein were acting as prosecutors with respect to Plaintiff's disciplinary hearing. *See, e.g.,* Am. Compl. ¶¶ 341-42. "A defendant engaged in advocative functions will be denied absolute immunity only if he acts 'without any colorable claim of authority.' The appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad *motive*, but whether the *acts* at issue are beyond the prosecutor's authority." *Id.* at 504 (emphases in original); *see also Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987) (threshold test for overcoming absolute immunity is showing that prosecutors proceeded against plaintiff in clear absence of jurisdiction).

To overcome any claim of absolute immunity, Plaintiff alleges in her Amended Complaint that the individual defendants acted without any legal authority. *See*, *e.g.*, Am. Compl. ¶¶ 323-25 (individual defendants herein cannot claim immunity because the disciplinary hearing was without jurisdiction or authority), ¶¶ 341-45, 353 (alleging that K&B and Klein lacked legal authority to act as prosecutor in the disciplinary hearing). However, such allegations lack merit, and this Court, in a related case, rejected them:

> Plaintiff's allegation that the Lorraine Wetzel disciplinary hearing is not authorized and therefore absolute immunity does not apply is unconvincing. The Court notes that under the Rockland County Police Act § 7, the town board "shall have the power and authority to adopt and

10

> make rules and regulations for the examination, hearing, investigation, and determination of charges, made or preferred against any member or members of such police department." *See also Matter of Patrolmen's Benevolent Ass'n of City of New York v. New York State Pub. Empl. Relations Bd.*, 6 N.Y.3d 563, 576, 815 N.Y.S.2d 1, 848 N.E.2d 448 (2006). Plaintiff offers no basis to conclude that the hearing was illegal or unauthorized, and the Court declines to search for one.

*Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 350 n.2 (S.D.N.Y. 2007).[4] Indeed, in that case, this Court held that Nulty was entitled to absolute immunity with respect to claims related to his initiation of the disciplinary proceedings against Plaintiff herein. *Id.* at 350. There is no reason to conclude otherwise in this action. Nor do Plaintiff's allegations that K&B and Klein unlawfully prosecuted the disciplinary charges against her in retaliation for her complaints of gender discrimination serve to defeat their claim of entitlement to absolute immunity. *See Bernard*, 356 F.3d at 504 ("[I]f 'an act [is] within a prosecutor's jurisdiction as a judicial officer,' 'absolute immunity attache[s] to his actions, regardless of his motivation.'") (citation omitted).

In their moving brief, with respect to their defense of absolute immunity, Nulty, K&B, and Klein simply state that "all claims in connection with the preferral and prosecution of the disciplinary charges must be dismissed, which includes but is not limited to the seventh[5] and eighth causes of action asserting a violation of Section 75-b of the New York State Civil Service Law and a conspiracy to interfere with Plaintiff's federal rights, respectively." Mem. of Law in

---

[4]In that case, Nicole Colandrea asserts a number of claims stemming from both the recording of several phone calls made to her by her boyfriend when he was being held in custody by the Orangetown Police, and the subsequent playing of those recordings at Plaintiff's disciplinary hearing. Among other things, Colandrea claims that the recordings violate the federal Wiretap Act.

[5]The seventh claim, brought under New York Civil Service Law § 75-b, should be dismissed for the reasons set forth in Section IV.A.1., *infra*.

Supp. of Mot. to Dismiss at 4. Without any further guidance, Defendants have left it to the Court to determine which claims ought to be dismissed on the ground of absolute immunity.[6]

Based on a fair reading of the Amended Complaint, it is clear that Plaintiff's second and third claims for retaliation, brought under both federal and state statutes, should be dismissed on this ground, since the complained-of retaliation is the preferment and prosecution of the disciplinary charges against her.[7] Therefore, Nulty is entitled to absolute immunity for his role in initiating the disciplinary proceedings against Plaintiff,[8] and K&B and Klein are entitled to absolute immunity for their role in prosecuting the disciplinary charges against her. Similarly, these defendants are entitled to absolute immunity with respect to Plaintiff's fourth claim for abuse of process, which is based on the initiation of the disciplinary proceedings. *See Deronette v. City of New York*, No. 05 CV 5275, 2007 WL 951925, at *3 (E.D.N.Y. Mar. 27, 2007) ("Absolute immunity is a defense not only to Plaintiff's claims asserted under § 1983, but also Plaintiff's state law claim[] for . . . abuse of process[.] In fact, a prosecutor arguably enjoys even greater immunity from state law claims than from federal claims brought under § 1983.") (citations omitted).[9]

---

[6]Because I recommend that Nulty, K&B, and Klein be granted absolute immunity on a number of Plaintiff's claims, as set forth herein, I need not address their arguments concerning qualified immunity.

[7]The third claim, brought under the New York Human Rights Law, is also for discrimination based on gender and political non-affiliation and the failure to promote Plaintiff. That part of the claim is not subject to dismissal based on absolute immunity, nor have Defendants asserted any other basis for its dismissal.

[8]Nulty does not seek dismissal of Plaintiff's retaliation claims insofar as they relate to the gynecological examination, sick checks, or the failure to promote Plaintiff, *see* Reply Mem. of Law [Doc. # 23] at 2, and those claims should stay in the case.

[9]The Court reads the Amended Complaint to allege a state law claim for abuse of process since the claim makes no reference to 42 U.S.C. § 1983.

Plaintiff's fifth claim, for denial of equal protection under § 1983, is utterly vague and conclusory. The sole substantive allegation therein states: "Defendants have denied Plaintiff the equal protection of the law, because she is a woman who has opposed unlawful discrimination." Am. Compl. ¶ 452. However, even if Plaintiff could state the elements of such a claim,[10] it is apparent that any allegations of selective or differential treatment would be based upon the retaliatory acts of Defendants, *i.e.*, the preferment and prosecution of the disciplinary charges against Plaintiff.[11] Consequently, this claim should be dismissed on the ground of absolute immunity.

The sixth claim, for the violation of Plaintiff's rights to substantive and procedural due process under § 1983 is fundamentally a claim concerning the legality of the disciplinary proceedings, *i.e.*, whether the Town Board had the legal authority to delegate the task of presiding over the disciplinary hearing to Wooley, as well as the manner in which the proceedings were conducted, *i.e.*, whether Wooley was a fair and impartial hearing officer, or whether he carried out his duties in a way that was prejudicial to Plaintiff. To the extent the claim is asserted against Nulty, K&B, and Klein, it seeks to hold them liable for their role in

---

[10]"To prevail on a selective treatment claim, a plaintiff must show that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006) (internal quotation marks and citations omitted). In addition, a plaintiff may state an equal protection claim based on a class of one, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted).

[11]Indeed, in her memorandum of law in opposition to these motions, Plaintiff states that her "action herein is founded on the denial of equal protection, and specifically, the reprisal which followed her refusal to abandon her (still pending) *Wetzel I* lawsuit opposing discrimination. . . . Plaintiff was singled out for retaliation because of her refusal to abandon her *Wetzel I* lawsuit." *See* Pl.'s Mem. of Law at 31.

having Wooley selected as the hearing officer.  Nonetheless, as previously stated, there is no

basis for Plaintiff to argue that the disciplinary proceedings were unauthorized or illegal, *see*

*Colandrea*, 490 F. Supp. 2d at 350 n.2, and therefore, she cannot use her due process claim to

relitigate this issue.  Furthermore, to the extent the claim is based on Wooley's role in the

conduct of the proceedings, and the way in which he performed that role, he is entitled to

absolute immunity, as more fully explained below.[12]

Lastly, Plaintiff's eighth claim, for conspiracy to deprive Plaintiff of equal protection of

the laws and neglect to prevent the commission of wrongs in connection with such conspiracy,

under §§ 1985 and 1986, revolves primarily around the preferment and prosecution of the

disciplinary charges against Plaintiff, including actions taken in the course of the disciplinary

hearing.  *See* Am. Compl. ¶¶ 493-526.[13]  Inasmuch as this claim is based in large measure on

Klein's introduction at the disciplinary trial of allegedly illegal wiretap evidence, such conduct is

protected by absolute immunity.  *See, e.g., Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)

---

[12]Indeed, this appears to be the main thrust of Plaintiff's due process claim, namely, that she was denied an impartial adjudicator at her disciplinary hearing.  *See* Pl.'s Mem. of Law at 21-29.

[13]Allegations in this claim that part of the conspiracy was to have Wooley appointed the hearing officer, since he expressly or tacitly agreed to rule against Plaintiff, *see* Am. Compl. ¶¶ 500-07, lack a factual basis, other than the fact that Wooley did, in the end, find Plaintiff guilty of most of the charges, and did recommend punishment.  *See* Klein Decl. Ex. S.  Moreover, it is neither alleged, nor can it reasonably be inferred, that anything that Wooley did or conspired to do with the other defendants in connection with his appointment as the hearing officer was motivated by Plaintiff's gender.  *See Gleason v. McBride*, 869 F.2d 688, 694-95 (2d Cir. 1989) ("In order for [plaintiff's] complaint to state a cognizable claim under the pertinent provisions of section 1985, it had to allege that he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants *acted with class-based, invidiously discriminatory animus*, and that he suffered damages as a result of the defendants' actions.") (emphasis added and citations omitted).  Rather, the only motivation alleged, at least on Wooley's part, was financial.  *See* Am. Compl. ¶ 506 ("Upon information and belief, defendant Wooley was appointed by the defendant Town hired [sic] with the understanding, express or tacit, that to receive future recommendations of employment by Keane & Beane, and to receive possible future employment from the defendant Town, his assignment was to preside over a sham trial in which he was to use his legal skills to craft findings and a recommendation supporting guilt.").

("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. . . . includ[ing] . . . allegedly conspiring to present false evidence at a criminal trial."). As the Second Circuit has stated in the context of a § 1983 claim, "[W]hen the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) (internal quotation marks and citation omitted).

## B.    Hearing Officer Wooley

Of the nine claims set forth in the Amended Complaint, it appears that only four of them are asserted against Wooley: the sixth claim (for procedural and substantive due process violations under 42 U.S.C. § 1983), the seventh claim (for violation of Civil Service Law § 75-b), the eighth claim (for conspiracy under 42 U.S.C. §§ 1985 and 1986), and the ninth claim (for violation of state Judiciary Law § 487). The crux of Plaintiff's claims against Wooley is that he was a biased hearing officer, who conducted the disciplinary hearing in a manner that denied Plaintiff due process, and that he conspired with the other defendants to deprive Plaintiff of equal protection under the law by conducting a "sham trial." Plaintiff alleges that K&B caused the Town Board to appoint Wooley as the hearing officer since they had had prior hearings before Wooley and expected that Wooley would find in their favor.[14] Am. Compl. ¶¶ 501-03; *see also*

---

[14]In support of her contention that Wooley was biased, Plaintiff cites to the decision in *Higham v. Temple*, No. 05 Civ. 7979, 2006 WL 2714712 (S.D.N.Y. Sept. 22, 2006). *See* Pl.'s Mem. of Law at 5, 23, 25. However, in that case, it was only alleged – not established – that Wooley is "widely known to always and/or virtually always decide disciplinary proceedings in favor of the municipal corporate subdivision paying his bill . . ." *Id.* at *1 (internal quotation marks omitted). That decision involved a different issue from the one at bar, namely, whether non-party Wooley, who had served as the hearing officer at the plaintiff's disciplinary proceedings, could be compelled to respond to a subpoena *duces tecum.* There, the plaintiff made allegations of pecuniary interest and bias on Wooley's part, but the court found that the allegations were unsubstantiated and quashed the subpoena.

*id.* ¶ 506 ("Upon information and belief, defendant Wooley was appointed by the defendant Town hired [sic] with the understanding, express or tacit, that to receive future recommendations of employment by Keane & Beane, and to receive possible future employment from the defendant Town, his assignment was to preside over a sham trial in which he was to use his legal skills to craft findings and a recommendation supporting guilt."). She further alleges that K&B and Wooley "clearly acted in concert against Lt. Wetzel at her disciplinary hearing and issued rulings so patently biased against Lt. Wetzel that any jury will reasonably conclude that defendant Wooley was acting as the accomplice of, and co-conspirator with, the other defendants." *Id.* ¶ 504. Wooley argues that the Amended Complaint should be dismissed as to him on the ground of absolute immunity.

It is well-settled that judges are entitled to absolute immunity from liability for acts performed in their judicial capacities. *See*, *e.g.*, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978); *Tucker v. Outwater*, 118 F.3d 930, 932-33 (2d Cir. 1997). "Judicial immunity is necessary because 'principled and fearless decision-making' will be compromised if a judge 'fear[s] that unsatisfied litigants may hound him with litigation charging malice or corruption.'" *Vasile v. Dean Witter Reynolds, Inc.*, 20 F. Supp. 2d 465, 488-89 (E.D.N.Y. 1998) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity may be overcome in only two instances: (1) when the actions in question were not taken in the judge's judicial capacity; and (2) when the actions, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citations omitted).

"The doctrine of quasi-judicial immunity extends immunity to administrative officials performing discretionary acts of a judicial nature," *DeMerchant v. Springfield Sch. Dist.*, No.

1:05 CV 316, 2007 WL 495240, at *3 (D.Vt. Feb. 9, 2007) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Butz v. Economou*, 438 U.S. 478, 513 (1978); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988)), and "bars claims against administrative law judges and hearing examiners performing judicial functions[.]" *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) (citation omitted), *aff'd*, 122 F.3d 1057 (2d Cir. 1997) (unpublished); *see also DeMerchant*, 2007 WL 495240, at *3 ("Indeed, many courts have held that state hearing officers who exercise independent quasi-judicial powers are entitled to absolute judicial immunity.") (citing cases).[15]

In this case, Wooley is being sued for actions taken in his role as a hearing officer. There are no allegations that Wooley was acting outside of his quasi-judicial capacity. Rather, Plaintiff alleges that Wooley is not entitled to absolute immunity because the disciplinary hearing was a "sham trial" that was biased and politically influenced. *See* Am. Compl. ¶¶ 367-99. While conceding that "[t]he disciplinary trial may have some of the superficial trappings of a genuine trial (a stenographer, a presiding officer, a prosecutor, and an adversarial dialog)," *id.* ¶ 389, she alleges that the hearing "lacks the reality of an adjudicatory proceeding, because the end result has been purchased by Chief Nulty's attorneys by arranging for the appointment of the fact-finding adjudicator, Defendant Wooley." *Id.*[16] In the end, Plaintiff's conclusory allegations,

---

[15]Whether non-judicial officers are entitled to quasi-judicial absolute immunity depends upon the "functional comparability" of their judgments to those of a judge. *See Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976). Functional comparability is determined by taking into consideration the following six factors: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

[16]Plaintiff disapproves of the process by which Wooley came to be appointed as the hearing officer in her disciplinary case, but her allegations in this regard amount to another way of arguing that the Town Board unlawfully delegated its authority to Wooley to preside over her disciplinary hearing. As

made "upon information and belief," amount to no more than a circular argument, *i.e.*, the disciplinary proceedings were not "judicial" because they were biased, and because they were biased, they were not "judicial," which fails to overcome Wooley's claim of entitlement to absolute immunity. "The Supreme Court has long held that absolute judicial immunity cannot 'be affected by the motives with which . . . judicial acts are performed.' Thus, a judicial act 'does not become less judicial by virtue of an allegation of malice or corruption of motive.'" *Bernard*, 356 F.3d at 505 (citations omitted); *see also Tucker*, 118 F.3d at 932 ("The cloak of immunity is not pierced by allegations of bad faith or malice, even though 'unfairness and injustice to a litigant may result on occasion.'") (citations omitted).[17]

The Amended Complaint is also replete with allegations that the disciplinary hearing was unauthorized and therefore, that Wooley acted without jurisdiction. *See, e.g.*, Am. Compl. ¶¶ 303, 312, 315, 322-23, 355-57, 361-64. As noted above, this assertion has been rejected in a related case, *Colandrea v. Town of Orangetown*, *supra*, and should be rejected here.

Consequently, Defendant Wooley should be dismissed from this action on the ground of absolute immunity.

## III.    Claims Against Kleiner

The only substantive allegations expressly referencing Kleiner are included in the abuse of process claim. Plaintiff alleges that Kleiner facilitated the initiation of the disciplinary

---

noted elsewhere in this Report and Recommendation, this argument must fail since the Town Board did, in fact, possess the legal authority to appoint Wooley.

[17]"Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 227 (1988).

proceedings by placing the charges before the Town Board and voting to allow them to proceed to a trial, and by placing upon the Town Board agenda, and voting in favor of, Wooley's appointment as the hearing officer. *See* Am. Compl. ¶¶ 443-44. Thus, Kleiner, along with other defendants, "caused the issuance of legal process (notice of disciplinary hearing) compelling Plaintiff to attend a disciplinary proceeding scheduled on July 11, 2006 and all proceedings held thereafter." *Id.* ¶ 446. Were the Amended Complaint to be read to assert a retaliation claim against Kleiner, based on his vote to approve the "improperly motivated disciplinary action against Plaintiff," Am. Compl. ¶ 443, such claim should be dismissed for lack of causation. The Town Board resolutions which allowed the disciplinary charges against Plaintiff to proceed to a hearing before Wooley were approved unanimously, *see* Am. Compl. Ex. 5; Klein Decl. Ex. R, with Kleiner's being just one of the votes, and Plaintiff nowhere alleges that the other Town Board members acted with an unlawful motive. *See Jeffries v. Harleston*, 52 F.3d 9, 14 (2d Cir. 1995) (reversing judgment in favor of a university professor because the nine votes to limit his term based on legitimate grounds were "a superseding cause breaking the causal chain between the tainted [retaliatory] motives of [certain defendants] and the decision to limit [the professor's] term").

However, on their face, the allegations in the Amended Complaint establish that Kleiner, as Town Supervisor, is entitled to absolute immunity for his role in the initiation of the disciplinary proceedings. *See Spear*, 954 F.2d at 66 ("[W]hen a high executive officer of a municipality authorizes a civil lawsuit in pursuit of that municipality's governmental interests, absolute immunity attaches."). This is so regardless of any alleged improper motive. *See Contes*, 345 F. Supp. 2d at 379 (absolute immunity insulates officials from liability in the

19

performance of certain functions, such as the preferment of administrative proceedings, without regard to motive). Therefore, despite the fact that Defendants do not make this argument in their motion papers, the Court should dismiss any claims against Kleiner *sua sponte* on this ground. *Cf. Chase v. Czajka*, No. 1:05-CV-0779, 2007 WL 680741, at *2 n.9 (S.D.N.Y. Feb. 28, 2007) (noting that while judge had not moved for dismissal based on absolute judicial immunity, court could grant such dismissal *sua sponte*).

## IV. Dismissal for Failure to State a Claim

In addition to their arguments that the claims relating to the disciplinary proceedings should be dismissed on the ground of absolute immunity, Defendants also contend that the fourth through the ninth claims should be dismissed for failure to state a claim upon which relief can be granted. To the extent that I have not already recommended the dismissal of these claims on the ground of absolute immunity, they are addressed below.

### A. Seventh Claim under State Law

Plaintiff's seventh claim presents three theories for relief under state law – Civil Service Law § 75-b, writ of *certiorari*, and writ of prohibition.

#### 1. *Civil Service Law § 75-b*

Defendants argue that because the federal claims related to the preferment and prosecution of the disciplinary charges should be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's Civil Service Law claim and that claim should be dismissed as well. *See* Mem. of Law in Supp. of Mot. to Dismiss at 30-31. However, since Defendants do not seek dismissal of all of the federal claims in this action by way of this motion, *see* note 20, *infra*, there is no reason why the Court should selectively decline to exercise its

supplemental jurisdiction over Plaintiff's state law claims, nor do Defendants provide a legal basis for doing so.

"[I]n order to state a claim under § 75-b, plaintiff must allege the following: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which she reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action." *Burns v. Cook*, 458 F. Supp. 2d 29, 44 (N.D.N.Y. 2006); *see* N.Y. Civ. Serv. Law § 75-b(2)(a). "Personnel action" is "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." N.Y. Civ. Serv. Law § 75-b(1)(d). Here, Plaintiff's conclusory allegations fail to state the elements of this claim. *See*, *e.g.*, Am. Compl. ¶¶ 474 ("First, this court has express jurisdiction to review the disciplinary hearing, and to grant Plaintiff a trial, under the provision of Civil Service Law § 75-b. The disciplinary trial was clearly for the sole purpose of retaliation.") & 478 ("Plaintiff has a remedy in this Court under N.Y.S. Civil Service Law § 75-b, because her retaliation claim was not permitted at the disciplinary hearing."). Moreover, she fails to identify the defendants against whom this claim is asserted, although it is clear that, by the terms of the statute, this claim may only be brought against the public employer and not individual employees in their individual capacities. *See Fry v. McCall*, 945 F. Supp. 655, 666 (S.D.N.Y. 1996). Finally, to the extent this claim is merely another way of alleging liability based on the preferment and prosecution of the disciplinary charges, it should be dismissed on the ground of absolute immunity.

### 2.    *Writ of Certiorari*

Plaintiff asserts a claim for the issuance of a writ of *certiorari*, directing the Town Board to cease prosecution of the disciplinary charges against her and asking the Court to "find, hold and declare that the ostensible 'trial' presided over by Defendant Wooley was and is a legal nullity, and should so direct the Town Board via writ of *certiorari*." Am. Compl. ¶ 485. While Defendants do not address this claim, this claim should nonetheless be dismissed since, as previously explained, the disciplinary hearing was legally authorized. *See Colandrea*, 490 F. Supp. 2d at 350 n.2.

### 3.    *Writ of Prohibition*

Plaintiff also asserts a claim which seeks "this Court's declaration and injunction prohibiting the use of wrongfully acquired wiretap evidence used [sic] against her in the disciplinary proceeding." Am. Compl. ¶ 486. However, as further alleged, "[b]oth Plaintiff and Ms. Colandrea sought suppression of this unlawfully obtained evidence, and both continue to request suppression by this federal court (the request for preliminary injunctive relief is *sub judice* in *Colandrea v. Orangetown*, 06 Civ 11441)." *Id.* ¶ 487. Therefore, there is no reason why this same issue should be separately litigated in the instant action, and this claim should be dismissed. *Cf. Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.") (citations omitted).

### B.    Ninth Claim for Violation of Judiciary Law § 487

Plaintiff asserts a claim against K&B, Klein, and Wooley under New York Judiciary Law § 487, however, the allegations fail to articulate clearly what the violative conduct was. Section

487 creates a cause of action against an attorney who engages in "deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Jud. Law § 487. Some courts have held that Section 487 should be applied only to a "chronic and extreme pattern of legal delinquency," while others have held that a violation of Section 487 may be established by a "single act or decision, if sufficiently egregious and accompanied by an intent to deceive." *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, No. 06 Civ. 14211, 2007 WL 2219485, at *4 n.6 (S.D.N.Y. Aug. 2, 2007) (internal quotation marks and citations omitted), *reconsideration denied*, 2008 WL 850163 (S.D.N.Y. Mar. 27, 2008). Under either standard, Plaintiff fails to state a claim under Section 487, since she insufficiently alleges a deceptive act on the part of K&B, Klein, or Wooley.

In part, the basis for Plaintiff's claim seems to be that K&B, Klein, and Wooley engaged in "deceit and collusion" by allowing the Town Board to appoint Wooley as the hearing officer for Plaintiff's disciplinary trial. *See* Am. Compl. ¶¶ 528-29, 533-34. However, "[f]or § 487 to apply, . . . the deceit must be of a party to a lawsuit in the course of a pending judicial proceeding." *Trautenberg*, 2007 WL 2219485, at *5 (citations omitted). Thus, since Wooley's appointment did not occur in the course of a pending judicial proceeding, this conduct is not actionable under Section 487. Moreover, since the disciplinary proceedings were legally authorized, Wooley's appointment was permitted by law, and therefore, Plaintiff cannot claim that these defendants engaged in deceit or collusion in either allowing or causing the Town Board to proceed with the appointment.

In addition, to the extent that Plaintiff is alleging that K&B and Klein are engaged in deceit in this litigation (or any of her other pending actions) by representing that Wooley was a

fair and impartial hearing officer,[18] such representations are the not the type of "chronic and extreme" or "egregious" conduct giving rise to liability under Section 487.  Rather, the standard under Section 487 "affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall 'well within the bounds of the adversarial proceeding.'" *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (citation omitted).

Lastly, insofar as this claim is alleging that Wooley engaged in "deceit and collusion" by not acting as a fair and impartial hearing officer during the disciplinary trial, *see* Am. Compl. ¶ 533, it is dismissed on the ground of absolute immunity.  *See* Section II.B., *supra*.

## V.  **Municipal Liability**

Plaintiff notes in her opposition brief that her assertion of municipal liability is based on the acts of the individual defendants and that therefore, to the extent the action is dismissed as to the individuals, it should be dismissed as to the Town.  *See* Pl.'s Mem. of Law at 35.  However, she makes this argument without distinguishing between her federal and state law claims and without citation to any legal authority in support thereof.  Thus, the Court cannot decide this issue at the present time.

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that your Honor grant Defendants' motions and that (1) Wooley and Kleiner be dismissed from this action; (2) the second

---

[18]Indeed, in describing this claim in her opposition brief, Plaintiff states that "[t]he deceit and collusion at issue is basic and a major theme of the Complaint – that what Defendants portray as a disciplinary hearing to fairly adjudicate charges against a career civil servant was in actuality a charade, employing Defendant Wooley for the purpose of convicting regardless of the facts."  Pl.'s Mem. of Law at 32.

(retaliation under federal law), third (retaliation under state law), fourth (abuse of process), fifth (equal protection), sixth (due process), and eighth (conspiracy) claims be dismissed against K&B, Klein, and Nulty[19] on the ground of absolute immunity; and (3) the seventh (Civil Service Law and writs) and ninth (Judiciary Law) claims be dismissed for failure to state a claim.[20]

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street**,** Room 621, White Plains, New York 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file

---

[19]However, the retaliation claims against Nulty based on the gynecological examination, sick checks, and failure to promote Plaintiff should remain in the case. *See* note 8, *supra*.

[20]Defendants nowhere address the first claim in the Amended Complaint, a federal discrimination claim based on the failure to promote Plaintiff in 2005, nor do they address the third claim brought under the New York Human Rights Law insofar as it alleges discrimination. Consequently, the Court must assume that they do not seek dismissal of these claims at this time.

*v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct.

825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek*

*v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file

objections must be made to Judge Robinson and should not be made to the undersigned.

Date: May **6**, 2008
White Plains, New York

Respectfully submitted,

MARK D. FOX
UNITED STATES MAGISTRATE JUDGE